UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

ENTRAL GROUP INTERNATIONAL, LLC,

     Plaintiff,

           <u>REPORT & RECOMMENDATION</u>

   - against -     CV 05-4836 (CBA)(MDG)

SUN SPORTS BAR INC., <u>et</u> <u>al.</u>,

     Defendants.

- - - - - - - - - - - - - - - - - - - X

GO, United States Magistrate Judge:

  Plaintiff Entral Group International, LLC ("Entral") brings this action against defendants Sun Sports Bar Inc., Fortune Holding Group Inc. ("Fortune"), David Chen, May Sun and Michael Yu (collectively "defendants") alleging infringement of its exclusive rights to Chinese language audio-visual karaoke works. By order dated February 7, 2007, the Honorable Carol B. Amon referred to me for report and recommendation plaintiff's motion for entry of default judgment against Sun Sports Bar Inc., Fortune and Michael Yu (the "defaulting defendants") and the amount of damages and attorneys' fees to be awarded. <u>See</u> ct. doc. 51.

<u>FACTUAL AND PROCEDURAL BACKGROUND</u>

  The pertinent facts are undisputed and are set forth in the Complaint ("Comp."), the Declaration of Nicolas Chai, the

President of Entral, dated October 14, 2005 ("10/14/05 Chai Decl.") (ct. doc. 22), the Supplemental Declaration of Nicolas Chai dated October 25, 2005 ("Supp. Chai Decl.") (ct. doc. 12), the Declaration of Nicolas Chai dated January 8, 2007 ("1/8/07 Chai Decl.") (ct. doc. 48) and the Declaration of Andy Wong dated October 21, 2005 ("Wong Decl.") (ct. doc. 47). Since most of the pertinent facts have previously been discussed in this Court's report and recommendation that plaintiff's motion for a preliminary injunction be granted (the "Report") (ct. doc. 15), this report will summarize the salient facts.

Entral licenses and distributes Chinese language audio-visual karaoke works for commercial use in the United States. Comp. at ¶ 10; 1/8/07 Chai Decl. at ¶ 4. It has the exclusive right to license in North America karaoke audio-visual works (the "Works") created in Hong Kong by certain companies, including Universal Music Limited, EMI Group Hong Kong Limited, Emperor Entertainment (Hong Kong) Limited, Go East Entertainment Company Limited, Cinepoly Record Co., and Warner Music Hong Kong Ltd. (collectively "the Companies"). Comp. at ¶ 17; 10/14/05 Chai Decl. at ¶ 7, Exh. B.

The Works consist of a constantly expanding list of works reflected in "catalogs" that are regularly updated. Supp. Chai Decl. at ¶¶ 4, 6, 7. Older works are contained in "Backlists" or "Back Catalogs," while more recent works are listed in "Control Catalogs." Id. at ¶ 7, Exh. 1, Schedules A and B. The Companies

-2-

have also authorized Entral to use several hundred additional audio-visual Works not contained in those catalogs. Id. at ¶ 7. Entral has registered some of the Works with the Registrar of Copyrights in the United States Copyright Office. Comp. at ¶ 21, Exh. A; 10/14/05 Chai Decl. at ¶ 11.

Defendant Sun Sports Bar Inc. and its parent, Fortune, are commercial entities which operated the Sun Sports Bar, a business that offers karaoke entertainment located at 135-20 39th Avenue in Flushing, New York. Comp. at ¶ 22; 10/14/05 Chai Decl. at ¶¶ 17-18. At Sun Sports Bar, there is a bar area and eight private rooms where patrons may access and perform karaoke works on computer equipment. Supp. Chai Decl. at ¶¶ 9-10. In August 2004, Nicolas Chai, President of Entral, visited Sun Sports Bar and observed that an extensive portion of the Works had been copied onto Sun Sports Bar's equipment and was available to its customers to use, even though defendants had no license to copy or use the Works. Comp. at ¶ 28; 10/14/05 Chai Decl. at ¶ 22.

After extensive negotiations, defendant Fortune entered into an "Outlet License Agreement" dated December 1, 2004 with Entral authorizing use of the Works at the Sun Sports Bar in exchange for a monthly license fee (the "License Agreement"). Comp. at ¶ 30; 10/14/05 Chai Decl. at ¶ 25, Exh. D. Defendant David Chen signed the License Agreement on behalf of Fortune as an "Officer" and certified in a "Declaration of Outlet Information" attached to the License Agreement that Michael Yu is President and

"contact person" for the corporation. 10/14/05 Chai Decl., Exh.
D. Subparagraph 10(ii) of the License Agreement specifies that
notices to Fortune should be sent to Michael Yu's attention at
the address for Sun Sports Bar. Id.

After making two payments covering fees for three months,
Fortune stopped making any payments required under the License
Agreement. Comp. at ¶¶ 34-36; 10/14/05 Chai Decl. at ¶¶ 29-31.
Plaintiff sent several notices to the two corporate defendants
declaring their breach of the License Agreement and demanding
that they cease use of the Works, but received no response.
Comp. at ¶¶ 37-38, 40-43; 10/14/05 Chai Decl. at ¶¶ 32-33, 35-38,
Exhs. G, H. However, on May 23, 2005 and October 14, 2005, Mr.
Chai and Andy Wong, an investigator, visited Sun Sports Bar and
observed continued use of the Works. Supp. Chai Decl. at ¶ 8;
Wong Decl. at ¶¶ 4-6; Comp. at ¶ 39; 10/14/05 Chai Decl. at ¶ 34.

On October 14, 2005, plaintiff commenced this action by
order to show cause, seeking a temporary restraining order
preventing defendants from infringing on its rights to the Works.
In support, Mr. Chai provided a list of karaoke pieces licensed
by the Companies that Mr. Chai and Mr. Wong were able to access
at the Sun Sports Bar. See 10/14/05 Chai Decl. at ¶¶ 11, 34,
Exh. F. That day, Judge Amon issued a temporary restraining
order, inter alia, enjoining defendants from infringing on
plaintiff's rights to the Works and directing that any documents

or electronic files relating to the Works be deleted. <u>See</u> ct. doc. 10.

Plaintiff served all the defendants at 135-20 39th Avenue, Flushing, the address for Sun Sports Bar, by serving a managing agent at that location. <u>See</u> Affidavits of Service (ct. docs. 2, 3, 4, 5, 6). Such service was properly effected on defendants Sun Sports Bar Inc. and Fortune since the summons and complaint were delivered to an agent authorized by appointment to receive service at that address for both corporate defendants.[1] <u>See</u> Affidavits of Service (ct. docs. 3, 4); Fed. R. Civ. P. 4(h)(1). The bar is also the actual place of business of Mr. Yu, who is an officer of Fortune. <u>See</u> 10/14/05 Chai Decl. at ¶ 21, Exh. D; N.Y. C.P.L.R. § 308.

On October 20, 2005, Mr. Chai and Mr. Wong visited Sun Sports Bar again and were offered the opportunity to access and perform the Works. Wong Decl. at ¶¶ 7-9; Supp. Chai Decl. at ¶¶ 14-16. Although many of the Works specifically listed in the Complaint and in plaintiff's motion papers had been deleted from the list of available karaoke selections, "hundreds, if not

---

[1] This Court takes judicial notice of the fact that the Certificate of Incorporation on file with the Secretary of State for New York lists that 39th Avenue address for "Suns Sports Bar Inc." <u>See</u> <u>Kramer v. Time Warner Inc.</u>, 937 F.2d 767, 774 (2d Cir. 1991) (taking judicial notice of contents of corporate filings with SEC); <u>Banks v. Consumer Home Mortgage</u>, No. 01-CV-8058, 2003 WL 21251584, at *6 n.7 (E.D.N.Y. Mar. 28, 2003) (taking judicial notice of public record on file with Secretary of State for Georgia); <u>McMichael v. U.S. Filter Corp.</u>, No. 99-182, 2001 WL 418981, at *8 (E.D. Ca. Feb. 23, 2001) (taking judicial notice of certificate of incorporation in Delaware).

thousands" of the Works constituting "a substantial portion, if not a majority" of all the karaoke materials offered continued to be available. Supp. Chai Decl. at ¶¶ 15-16; Wong Decl. at ¶¶ 9-11.

On November 22, 2005, the undersigned issued a report and recommendation finding that Entral had established a prima facie case of copyright infringement and recommending that the Court issue a preliminary injunction and an order of impoundment. On November 23, 2005, Judge Amon adopted my report and recommendation and issued a preliminary injunction, without prejudice to any objections to be filed, and reserved decision regarding the proposed order of impoundment. See ct. docs. 17, 18. Defendants Fortune and Chen subsequently obtained extensions of time to object to my report and recommendation and filed objections. See ct. docs. 19, 20, 24; electronic orders dated December 12 and 21, 2005. On April 25, 2006, Judge Amon granted the motion to withdraw of Fortune's and Chen's counsel, continued the preliminary injunction and granted in part and denied in part the request for an order of impoundment. See ct. doc. 30. Plaintiff later settled its claims against Mr. Chen. See ct. doc. 41.

Following the failure to answer plaintiff's complaint by defendants Sun Sports Bar, Inc., Fortune, May Sun and Michael Yu, plaintiff filed a motion for entry of default against them on

December 19, 2006. <u>See</u> ct. doc. 42. Entral subsequently settled its claims against defendant May Sun. <u>See</u> ct. doc. 60.

DISCUSSION

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except for those relating to damages. <u>Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.</u>, 973 F.2d 155, 158 (2d Cir. 1992); <u>Au Bon Pain Corp. v. Artect, Inc.</u>, 653 F.2d 61, 65 (2d Cir. 1981). A default also effectively constitutes an admission that damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged. <u>Au Bon Pain</u>, 653 F.2d at 69-70. The movant need prove "only that the compensation sought relate to the damages that naturally flow from the injuries pleaded." <u>Greyhound</u>, 973 F.2d at 159.

The court must ensure that there is a reasonable basis for the damages specified in a default judgment. Actual damages or statutory damages may be assessed. In determining damages not susceptible to simple mathematical calculation, Fed. R. Civ. P. 55(b)(2) gives a court the discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. <u>Action S.A. v. Marc Rich & Co., Inc.</u>, 951 F.2d 504, 508 (2d Cir. 1991) (quoting <u>Fustok v. Conticommodity Serv, Inc.</u>, 873 F.2d 38, 40 (2d Cir. 1989)). The

moving party is entitled to all reasonable inferences from the evidence it offers.  Au Bon Pain, 653 F.2d at 65 (citing Trans World Airlines, Inc. v. Hughes, 308 F. Supp. 679, 683 (S.D.N.Y. 1969)).

Liability of Defendants

In order to prevail on a claim of copyright infringement, a plaintiff must demonstrate that it owns a valid copyright and that the defendant engaged in unauthorized copying of the constituent original elements of plaintiff's work.  Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139 (2d Cir. 1992).  Pursuant to the Berne Convention for the Protection of Literary and Artistic Works ("Berne Convention"), a foreign national "may seek copyright protection under the Copyright Act although the source of its rights lies abroad."  Bridgeman Art Library, Ltd. v. Corel Corp., 25 F. Supp. 2d 421, 425 (S.D.N.Y. 1998); see Itar-Tass Russian News Agency v. Russian Kurier, Inc., 153 F.3d 82 (2d Cir. 1998) (Russian news service sued defendant for infringement); 17 U.S.C. § 104(b)(2) (extending protection of sections 102 and 103 of the Copyright Act to works first published in foreign countries which are members of the Berne Convention); see also La Resolana Architects, PA v. Clay Realtors Angel Fire, 416 F.3d 1195, 1201 n.5, 1205-06 (10th Cir. 2005); Jose Armando Bermudez Co. v. Bermudez Int'l, No. 99 Civ. 9346,

2000 WL 1225792, at *10 (S.D.N.Y. Aug, 29, 2000); 17 U.S.C. §§ 101, 411(a). Both Hong Kong and the People's Republic of China are signatories to the Berne Convention. See United States Copyright Office, Circular 38a, International Copyright Relations of the United States (Mar. 1, 2003), available at http://www.copyright.gov/circs/circ38a.pdf.

Moreover, exclusive licensees are treated as copyright owners of the rights licensed and may sue for copyright infringement pursuant to 17 U.S.C. § 201(d)(2) which provides that "[t]he owner of any particular exclusive right is entitled, to the extent of that right, to all of the protection and remedies accorded to the copyright owner by this title." Morris v. Bus. Concepts, Inc., 259 F.3d 65, 69 (2d Cir. 2003); Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002); 17 U.S.C. §§ 201(d)(2), 501(b).

As discussed more fully in the Report, plaintiff has offered undisputed and adequate proof that it owns exclusive U.S. distribution and licensing rights to the Works which were created in Hong Kong. Report at 8-12; see Comp. at ¶¶ 13, 17, 21, Exh. A; 10/14/05 Chai Decl. at ¶¶ 7, 11, Exhs. A, B, C.

Plaintiff also has presented substantial proof of infringement of the Works by the defaulting defendants. Nicolas Chai and Andy Wong establish in their affidavits that, on the various occasions they visited Sun Sports Bar, defendants offered many of the Works to customers at the bar even though defendants

-9-

lacked authorization to copy or use the Works.  In fact, the
infringement continued after defendant Fortune defaulted in
payment under a license agreement with plaintiff and even after
Judge Amon issued an order restraining the display of the Works.
10/14/05 Chai Decl. at ¶ 34; Supp. Chai Decl. at ¶¶ 8, 14-16.

     This Court originally recommended that a preliminary
injunction be issued against only the corporate defaulting
defendants, because of plaintiff's failure to demonstrate that
Michael Yu has "the ability to supervise infringing activity <u>and</u>
has a financial interest in that activity, or [] personally
participates in that activity."  Report at 13 (quoting <u>Shady
Records, Inc. v. Source Enters., Inc.</u>, No. 03 CIV. 9944, 2005 WL
14920, at *23 (S.D.N.Y. Jan. 3, 2005)).  However, in the default
context, this Court may draw inferences from the evidence
presented in favor of plaintiff.  <u>See</u> <u>Au Bon Pain</u>, 653 F.2d at
65.  Here, plaintiff's submissions establish that defendant Yu is
the President of at least Fortune and was the person designated
by Fortune under the License Agreement as the "contact person"
and person for receipt of notices, which were to be sent to Yu at
Sun Sports Bar.  Plaintiff sent two notices of default on payment
under the License Agreement to Yu at the bar, as well as serving
the temporary restraining order upon him there.  Drawing all
inferences in favor of plaintiff from these facts, this Court
concludes that plaintiff has sufficiently established that Yu
conducted business at Sun Sports Bar and had the authority to

-10-

supervise the alleged infringing activities.  Thus, I recommend
that default judgment be granted as to the three defaulting
defendants.

Determination of Damages

     Section 504(c) of the Copyright Act (the "Act") provides
that "[a] copyright owner may elect . . . to recover, instead of
actual damages and profits, an award of statutory damages for all
infringements involved in the action."  17 U.S.C. § 504(c)(1);
see N.A.S. Import Corp. v. Chenson Enters., Inc., 968 F.2d 250,
252 (2d Cir. 1992); Arista Records, Inc. v. MP3Board, Inc., No.
00 CIV. 4660, 2002 WL 1997918, at *13 (S.D.N.Y. Aug. 29, 2002)
(copyright owner may elect to recover statutory damages "simply
upon a showing of infringement").  If statutory damages are
elected, the Court has the discretion to award any just remedy in
an amount ranging from not less than $750 to not more than
$30,000 for each copyrighted work found to be infringed.  17
U.S.C. § 504(c)(1).  Entral has elected to recover statutory,
rather than actual, damages against defendants.  Although
plaintiff has presented information regarding lost license fees
and estimated gross profits realized by defendants, see 1/8/07
Chai Aff. at ¶¶ 18-19, statutory damages are particularly
appropriate in this case because of the difficulty in determining
with any degree of accuracy the extent of defendant's
infringement.  See Van Der Zee v. Greenidge, No. 03 CV 8659, 2006

WL 44020, at *1 (S.D.N.Y. Jan. 6, 2006); Granada Sales Corp. v. Aumer, No. 02 CV 6682, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003); Video Aided Instruction, Inc. v. Y & S Express, Inc., No. 96 CV 518 (CBA), 1996 WL 711513, at *4 (E.D.N.Y. Oct. 29, 1996); Latin Am. Music Co. v. Spanish Broad. Sys., 866 F. Supp. 780, 782-83 (S.D.N.Y. 1994).

In assessing statutory damages, the court may take into account the "'expenses saved and profits reaped by the defendant in connection with the infringements, the revenues lost by the plaintiffs as a result of the defendant's conduct, and the infringers' state of mind - whether willful, knowing, or merely innocent.'" N.A.S. Import, 968 F.2d at 252 (quoting Boz Scaggs Music v. KND Corp., 491 F. Supp. 908, 914 (D. Conn. 1980)); see also Basic Books, Inc. v. Kinko's Graphics Corp., 758 F. Supp. 1522, 1544 (S.D.N.Y. 1991). Statutory damages under section 504(c) are designed not only to compensate for injury but also to deter wrongful conduct. See Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 113-14 (2d Cir. 2001).

If the infringement is found to be willful, the court may, in its discretion, increase the award up to a maximum of $150,000 per infringement. See 17 U.S.C. § 504(c)(2). Willfulness is determined by an inquiry into whether the defendant had knowledge that its conduct represented infringement or had recklessly disregarded the possibility of infringement. See Lipton v. Nature Co., 71 F.3d 464, 472 (2d Cir. 1995); Twin Peaks Prods.,

Inc. v. Publ'ns Int'l, Ltd., 996 F.2d 1366, 1382 (2d Cir. 1993).
Since knowledge of infringement may be "actual" or
"constructive," it need not be proven directly and can be
inferred from the defendant's conduct.  See Knitwaves, Inc. v.
Lollytogs, Ltd., 71 F.3d 996, 1010 (2d Cir. 1995); N.A.S. Import,
968 F.2d at 252.  A defendant's default may also be considered as
evidence of willful infringement.  See Kenneth J. Lane, Inc. v.
Heavenly Apparel, Inc., No. 03 CV 2132, 2006 WL 728407, at *6
(S.D.N.Y. March 21, 2006); Peer Int'l Corp. v. Max Music &
Ent'mt, No. 03 Civ. 0996, 2004 WL 1542253, at *3 (S.D.N.Y. July
9, 2004); Tiffany (NJ) Inc. v. Luban, 282 F. Supp. 2d 123, 124
(S.D.N.Y. 2003).

Plaintiff requests the maximum statutory damages of $150,000
for each of defendants' willful infringement of 14 of the Works
that are registered with the U.S. Copyright Office.  See Pl.'s
Mem. in Support (ct. doc. 46) at 11.  Plaintiff has adequately
demonstrated that defendants acted willfully in their
infringement of a large number of the Works.  In October 2005,
plaintiff's investigator observed many of the Works being offered
to the public at Sun Sports Bar.  Wong Decl. at ¶ 6.  After
plaintiff served this Court's Order to Show Cause for a
Preliminary Injunction, Mr. Wong observed that defendants were
still offering to the public Works exclusively licensed to
plaintiff without its authorization, including two of the Works
registered with the U.S. Copyright Office.  Wong Decl. at ¶¶ 8-

10; Supp. Chai Decl. at ¶¶ 14-15.  Although plaintiff specifically identifies only two of the Works registered with the U.S. Copyright Office that were offered by defendants, plaintiff's submissions are sufficient to support the inference that defendants willfully infringed its rights to 14 of the Works registered in the United States.  <u>See</u> Wong Decl. at ¶ 6. Further, as discussed earlier, plaintiff is entitled to assert a claim for copyright infringement for other Works protected under the Berne Convention and not strictly the 14 Works for which plaintiff has submitted U.S. copyright registrations.  Indeed, defendant's failure to participate in this action, which may also be viewed as evidence of willfulness, <u>see</u> <u>Kenneth J. Lane</u>, 2006 WL 728407, at *6; <u>Peer Int'l</u>, 2004 WL 1542253, at *3; <u>Tiffany</u>, 282 F. Supp. 2d at 124, makes it impossible to determine the true extent of its infringing activities.  I therefore recommend that the Court award plaintiff $2,100,000 in damages for defendants' willful infringement, based on damages of $150,000 for infringement of 14 of plaintiff's Works.  <u>See</u> <u>Entral Group Int'l,</u> <u>LLC v. Honey Café on 5th Inc.</u>, 05-CV-2290, ct. docs. 26, 28 (E.D.N.Y. Dec. 7 and 19, 2006) (Garaufis, J.) (same); <u>Entral</u> <u>Group Int'l, LLC v. Fortuna Lounge Rest. Corp.</u>, 05-CV-1914, ct. doc. 8 (E.D.N.Y. Nov. 30, 2005) (Garaufis, J.) (awarding plaintiff $2.1 million in damages); <u>Entral Group Int'l, LLC v.</u> <u>KB28, Inc.</u>, 05-CV-1652, ct. doc. 10 (E.D.N.Y. Nov. 10, 2005) (Glasser, J.) (same).

<u>Injunctive Relief</u>

Plaintiff seeks a permanent injunction prohibiting defendants from copying, distributing or performing any of the Works exclusively licensed to Entral. "A court may 'issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction.'" <u>Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.</u>, No. CV-05-3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (quoting <u>King v. Nelco Indus., Inc.</u>, No. 96-CV-4177, 1996 WL 629564, *1 (E.D.N.Y. Oct. 23, 1996)). Under section 502(a) of the Act, a court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). To obtain a permanent injunction, plaintiff must establish that 1) absent injunctive relief, it will suffer irreparable harm, and 2) actual success on the merits. <u>See</u> <u>Amoco Prod. Co. v. Village of Gambell</u>, 480 U.S. 531, 546 (1987); <u>N. Atl. Instruments, Inc. v. Haber</u>, 188 F.3d 38, 43 (2d Cir. 1999). Generally, the movant must show the threat of a continuing violation in order to obtain injunctive relief. <u>See</u> <u>Barrera v. Brooklyn Music, Ltd.</u>, 346 F. Supp. 2d 400, 412-13 (S.D.N.Y. 2004); <u>Boisson v. Banian Ltd.</u>, 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003).

As discussed, plaintiff has demonstrated defendants'

liability, and thus, actual success on the merits.  Where, as here, plaintiff has established a <u>prima</u> <u>facie</u> case of copyright infringement, irreparable harm is presumed.  <u>See</u> <u>Merkos L'inyonei Chinuch, Inc. v. Otsar Sifrei Lubavitch</u>, 312 F.3d 94, 96 (2d Cir. 2002); <u>ABKCO Music, Inc. v. Stellar Records, Inc.</u>, 96 F.3d 60, 64 (2d Cir. 1996); <u>U2 Home Ent'mt, Inc. v. Bowery Music City, Inc.</u>, No. 03 Civ. 8909, 2003 WL 22889738, at *1 (S.D.N.Y. Dec. 8, 2003).  Moreover, it is likely that in the absence of an injunction the defaulting defendants will continue to infringe plaintiff's copyright interests.  Besides failing to respond to plaintiff's cease and desist letters and the Complaint, defendants continued to engage in infringing activities after they were served with the Complaint and temporary restraining order.  <u>See</u> <u>Barrera</u>, 346 F. Supp. 2d at 413; Wong Decl. at ¶¶ 8-10.  Since plaintiff has met the requisite showing to justify issuance of a permanent injunction, I recommend that plaintiff's request for injunctive relief against the defaulting defendants be granted.

<u>Request for Forfeiture</u>

Plaintiff requests an order of forfeiture pursuant to section 503 of the Act.  Section 503(b) provides for forfeiture "[a]s part of a final judgment" including, "the destruction or other reasonable disposition of all copies . . . found to have been made or used in violation of the copyright owner's exclusive

rights" as well as the means by which such copies may be reproduced.  17 U.S.C. § 503(b); <u>see</u> <u>Sony Corp. of Am. v.</u> <u>Universal City Studios</u>, 464 U.S. 417, 433-434 (1984); 4 Melville B. Nimmer & David Nimmer, <u>Nimmer on Copyright</u> § 14.08 (2005) (discussing remedy of forfeiture under section 503(b)).

The standard for determining whether a request for forfeiture should be granted is the same as the standard for injunctive relief.  <u>See</u> <u>Barrera</u>, 346 F. Supp. 2d at 406, 413; <u>Antenna Television v. Aegean Video, Inc.</u>, No. 95-CV-2328, 1996 WL 298252, at *13 (E.D.N.Y. Apr. 23, 1996); <u>Peer Int'l. Corp. v.</u> <u>Luna Records, Inc.</u>, 887 F. Supp. 560, 570 (S.D.N.Y. 1995). Although forfeiture is discretionary relief, forfeiture is particularly appropriate where a court seeks to prevent future infringements.  <u>See</u> <u>Rogers v. Koons</u>, 960 F.2d 301, 313 (2d Cir. 1992); <u>Barrera</u>, 346 F. Supp. 2d at 406, 413; <u>Antenna</u>, 1996 WL 298252, at *13; <u>Peer Int'l</u>, 887 F. Supp. at 570; <u>Basquiat v.</u> <u>Baghoomian</u>, No. 90-CV-3853, 1992 WL 125529, at *3 (S.D.N.Y. 1992).  Further, the entitlement of forfeiture extends to any equipment which may be used for infringing purposes.  <u>See</u> <u>Nova</u> <u>Prods., Inc. v. Kisma Video, Inc.</u>, No. 02 Civ. 3850, 2004 WL 97692, at *2 (S.D.N.Y. Jan. 20, 2004); <u>Universal City Studios,</u> <u>Inc. v. Ahmed</u>, No. CIV. A. 93-3266, 1994 WL 185622, at *5 (E.D. Pa. May 13, 1994); <u>Basquiat</u>, 1992 WL 125529, at *3; <u>RSO Records,</u> <u>Inc. v. Peri</u>, 596 F. Supp. 849, 863 (S.D.N.Y. 1984); 17 U.S.C. § 503(b).

Since this Court has already recommended issuance of a permanent injunction to enjoin defendants' continuing infringement of plaintiff's protected works, this Court further recommends, for the same reasons, that an order of forfeiture be issued. Such an order should cover not only infringing copies, but also the equipment which facilitates the infringement as set forth in the form of the Proposed Default Judgment and Permanent Injunction (ct. doc. 45) filed by plaintiff. Plaintiff has established that specialized equipment at Sun Sports Bar, including one or more computer systems, enable patrons to select and display audio-visual karaoke materials, including the Works. Wong Decl. at ¶ 5. It is likely that there are one or more computers at Sun Sports Bar that are used to copy karaoke works onto a networked computer system ("copying computer"), store those karaoke works ("storage computer"), and distribute those karaoke works to the lounge area and private rooms ("distribution computer"). Supp. Chai Decl. at ¶¶ 10-13. Thus, forfeiture should include the copying computer, the storage computer and the distribution computer. Although the equipment to be forfeited may also be used for non-infringing karaoke works, "even if equipment may be used for a legitimate purpose, it is not protected from seizure if it is alleged to have been employed for illegal purposes." Nova Prods., 2004 WL 97692, at * 2; Century Home Entm't, Inc. v. Laser Beat, Inc., 859 F. Supp. 636, 639 (E.D.N.Y. 1994).

If plaintiff sells any of the forfeited equipment should it be commercially reasonable to do so, the proceeds of such sale, minus the costs of sale, should be applied pro rata against the damages assessed against defendants. See RSO Records, 596 F. Supp. at 864.

## Attorneys' Fees and Costs

Plaintiff also seeks $97,587.59 in attorneys' fees and $1,035.66 in costs. See Declaration of Robert E. Hanlon dated January 8, 2007 ("Hanlon Decl.") (ct. doc. 49) at ¶¶ 4-5, 12, Exhs. A, C; Supplemental Declaration of Robert E. Hanlon dated March 22, 2007 ("Supp. Hanlon Decl.") (ct. doc. 61) at ¶¶ 4-5, Exhs. A, B.

Section 505 of the Act allows the prevailing party to recover full costs and reasonable attorneys' fees at the court's discretion. See Twin Peaks Prods., 996 F.2d at 1383; 17 U.S.C. § 505. A finding that a defendant's copyright infringement was willful can support an attorneys' fees award. See Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 289 (2d Cir. 1999). Given the defendant's willful infringement and failure to participate in this action, an award of attorneys' fees and costs is appropriate.

In determining reasonable attorneys' fees, courts use the lodestar method by examining "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly

rate." Hensley v. Eckerhart, 461 U.S. 424, 434 (1983); Chambless
v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59
(2d Cir. 1989); see also Crescent Publ'g Group, Inc. v. Playboy
Enters., 246 F.3d 142, 150 (2d Cir. 2001) (applying lodestar
method in copyright infringement case).  Reasonable hourly rates
are determined by examining the rates "'prevailing in the
community for similar services of lawyers of reasonably
comparable skill, experience, and reputation.'" Cruz v. Local
Union No. 3, 34 F.3d 1148, 1159 (2d Cir. 1994) (quoting Blum v.
Stevenson, 465 U.S. 886, 896 n.11 (1984)).  The relevant
community is the district in which the court sits.  Luciano v.
Olsten Corp., 109 F.3d 111, 115 (2d Cir. 1997).

In reviewing a fee application, the district court must
examine the particular hours expended by counsel with a view to
the value of the work product of the specific expenditures to the
client's case.  See Lunday v. City of Albany, 42 F.3d 131, 133
(2d Cir. 1994); DiFilippo v. Morizio, 759 F.2d 231, 235 (2d Cir.
1985).  If any expenditure of time was unreasonable, the court
should exclude these hours from the lodestar calculation.  See
Hensley, 461 U.S. at 434; Lunday, 42 F.3d at 133.  The court
should thus exclude "excessive, redundant or otherwise
unnecessary hours, as well as hours dedicated to severable
unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422,
425 (2d Cir. 1999).  A party seeking attorneys' fees bears the
burden of supporting its claim of hours expended by accurate,

detailed and contemporaneous time records. <u>N. Y. State Ass'n for</u>
<u>Retarded Children v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir.
1983). Several courts have recognized that "it is less important
that judges attain exactitude, than that they use their
experience with the case, as well as their experience with the
practice of law, to assess the reasonableness of the hours
spent." <u>See</u>, <u>e.g.</u>, <u>Alveranga v. Winston</u>, 04-CV-4356, 2007 WL
595069, at *5 (E.D.N.Y. Feb. 22, 2007); <u>Diawa Special Asset Corp.</u>
<u>v. Desnick</u>, 00 Civ. 3856, 2002 WL 31767817, at *2 (S.D.N.Y. Dec.
3, 2002); <u>Amato v. City of Saratoga Springs</u>, 991 F. Supp. 62, 66
(N.D.N.Y. 1998).

I find that the rates charged of $560.00 per hour for
partner Robert E. Hanlon, $360.00 per hour for associate Sarah
Hsia, $340.00 for associate Brook Clark and $138.00 per hour for
paralegal Sarah Thomas are reasonable and within the range of
rates charged for copyright infringement cases in New York City.[2]
<u>See</u> <u>Video-Cinema Films, Inc. v. Cable News Network, Inc.</u>, Nos. 98
Civ. 7128, <u>et</u> <u>al.</u>, 2004 WL 213032, at *3 (S.D.N.Y. Feb. 3, 2004)
(noting that in 2000, median billing rate for New York City
intellectual property law firms was $370 per hour for partners
and $250 per hour for associates); <u>Stevens v. Aeonian Press,</u>
<u>Inc.</u>, No. 00 Civ. 6330, 2002 WL 31387224, at *5 (S.D.N.Y. Oct.
23, 2002) (approving rate of $470 per hour for partner, an

---

[2] Although a few time entries reflect work done by other
employees, their rates are comparable to the personnel listed
above.

average of approximately $284 per hour for associate time and
paralegal time billed at $135 per hour); Yurman Designs, Inc. v.
PAJ, Inc., 125 F. Supp. 2d 54, 58 (S.D.N.Y. 2000) (approving
billing rate of $520 per hour for partners, average billing rate
of $278 per hour for associates and $162 for paralegals), aff'd,
29 Fed. App'x 46 (2d Cir. 2002).  Although attorney rates are
generally evaluated in comparison to those charged in the
district in which the court sits, courts in the Eastern District
of New York often use rates for New York City attorneys awarded
in the Southern District of New York as a basis for comparison.
See Nicholson v. Williams, No. 00 CV 2229, 2004 WL 4780498, at
*10-*11 (E.D.N.Y. April 5, 2004); Tokyo Electron Ariz., Inc. v.
Discreet Indus. Corp., 215 F.R.D. 60, 63 (E.D.N.Y. 2003); New
Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 303-04
(E.D.N.Y. 1998).

Plaintiff seeks attorneys' fees of $97,587.59 for
approximately 310 hours of work completed by its counsel, Alston
& Bird LLP.  Hanlon Decl. at ¶¶ 4, 11, Exh. A; Supp. Hanlon Decl.
at ¶ 4, Exh. A.  However, because of the vagueness of the billing
records, excessive time spent and the plaintiff's settlement with
two of the defendants, a significant reduction in the fees
claimed is warranted.

Many of the time entries are vague, complicating the task of
determining whether the time spent is reasonable.  For example,
entries such as "[c]onference with B. Hanlon regarding litigation

status and update;" "conference call with Nic and Brook;" "[m]eet with Nic and Brook" are insufficient descriptions of the work performed. Some of the time entries are obviously excessive, including 29.29 hours billed by paralegal Sarah Thomas for "updat[ing] case binders." I recommend that those hours be disallowed. In addition, time entries for February 21 and 23, 2006 appear to relate to plaintiff's counsel retrieving documents from Entral's former counsel. <u>See</u> Hanlon Decl., Exh. A at 8. An award for that time should also be disallowed.

Some of the time entries clearly concern work in other cases. For example, one hour was billed by paralegal Sarah Thomas for, "Print updated docket sheet and Motion, Entry of Default, and Order for Entral v. Legend Café." <u>Id.</u>, Exh. A at 4. Other entries contain several references to tasks completed in this and other cases, including a January 4, 2006 entry for .2 hours billed by Ms. Clark for, "[r]eviewed dockets for all cases and updated case status spreadsheets; conference with B. Hanlon regarding same. Conference with B. Hanlon and Nic Chai regarding status of matters. Drafted letter to YHCL regarding responding to EGI's discovery requests; exchanged e-mail with B. Hanlon regarding same." <u>Id.</u> at 6. On January 12, 2006, Ms. Clark billed .07 hours for "Conference with S. Hsia, A. Castro and S. Thomas regarding organization and maintenance of all pending EGI cases; conference with S. Hsia regarding status of cases; file organization." <u>Id.</u> at 7. Clearly, fees charged for work

-23-

attributable to cases against other defendants are not recoverable.  <u>See</u> <u>Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.</u>, 303 F. Supp. 2d 356, 364 (S.D.N.Y. 2003).  I recommend that no fees be awarded for those 1.27 hours.

Plaintiff's counsel spent more than 132 hours (totaling $45,920) in October 2005 preparing the complaint and the applications for a temporary restraining order, preliminary injunction and order of impoundment.  <u>See</u> Hanlon Decl., Exh. A at 1-4.  Spending such an amount of time preparing a routine case is unreasonable and excessive, particularly for counsel claiming experience in copyright litigation.  Also, the complaint filed in this case is strikingly similar to other complaints filed in this courthouse in actions brought by plaintiff.[3]  Moreover, because these time entries commingle various activities, it is impossible for the Court to determine how much time was spent on a specific task and credit some portion of those time entries.

After October 2005, plaintiff's counsel charged $19,548.75 for further work regarding all the defendants, not including time spent seeking default judgment.  However, plaintiff has settled its claims against two of the original five defendants in this action.  Time spent preparing plaintiff's case against other defendants in addition to the defaulting defendants should be

---

[3] <u>See</u>, <u>e.g.</u>, <u>Entral Group Int'l, LLC v. Honey Café on 5th Inc.</u>, 05-CV-2290, ct. doc. 1 (E.D.N.Y.); <u>Entral Group Int'l, LLC v. Fortuna Lounge Rest. Corp.</u>, 05-CV-1914, ct. doc. 1 (E.D.N.Y.); <u>Entral Group Int'l, LLC v. 7 Day Café & Bar Inc.</u>, 05-CV-1911, ct. doc. 1 (E.D.N.Y.).

apportioned equally between all the defendants.  See Arclightz,
303 F. Supp. 2d at 364 (reducing by half charges fairly
attributable to either of two defendants).  Therefore, I
recommend that the fees of $65,468.75 ($45,920 + 19,548.75)
sought for work concerning all the defendants be reduced by 40%
to $39,281.25.

In addition, plaintiff's counsel seeks compensation of
$10,654 for work which pertained solely to defendant David Chen
and $1,723.50 for work relating solely to defendant May Sun, both
of whom settled the claims against them.  Therefore, compensation
for those hours should be disallowed.  Although some of these
time entries may reflect work concerning other defendants, the
entries are not sufficiently clear to enable the Court to
determine how much time was spent on other tasks in order to
credit some portion of those time entries.  Accordingly, I
recommend that no fees be awarded for the $12,377.50 claimed.

Similarly, counsel billed $9,499.55 for time spent
addressing defendants Fortune's and David Chen's objections to my
November 22, 2005 report and recommendation.  Half the time spent
addressing these objections should be disallowed given the
settlement with Chen.  See Arclightz, 303 F. Supp. 2d at 364.
Therefore, I recommend awarding plaintiff's counsel $4,749.77 for
this work.

Plaintiff's counsel seeks $5,878.50 for work relating to
obtaining a default judgment.  However, plaintiff settled its

claims against one of the four defaulting defendants, May Sun. Therefore, I recommend reducing the amount requested by 25% to $4,408.88.

For the foregoing reasons, I recommend awarding plaintiff attorneys' fees in the amount of $48,439.90.

Plaintiff also requests an additional $2,000 in attorneys' fees "that are likely to be incurred through implementation of the Proposed Default Judgment and Permanent Injunction." See Hanlon Decl. at ¶ 5. Plaintiff's counsel provides no other explanation for this request in terms of either the hours estimated to be necessary or the hourly rate to be charged for such work. Accordingly, in the absence of any information sufficient to provide an adequate basis for calculating such an award, I recommend awarding only $500 for plaintiff's request for attorneys' fees to be incurred in the future. See Cinelli v. MCS Claims Servs., 236 F.R.D. 118, 122 (E.D.N.Y. 2006) (awarding anticipated fees and costs to be spent administering settlement). However, plaintiff should be permitted to renew its request for such an award once the work is actually completed.

Finally, I find that plaintiff's request for $1,035.66 in costs consisting primarily of filing fees, service costs, postage and on-line research costs (see Hanlon Decl., Exh. C; Suppl. Hanlon Decl., Exh. B) are recoverable and reasonable. See Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004) ("on-line research services . . . may

properly be included in a fee award"); <u>Aston v. Sec'y of Health &</u>
<u>Human Servs.</u>, 808 F.2d 9, 12 (2d Cir. 1986) (photocopying and
postage are reimbursable costs).

Thus, I recommend that plaintiff be awarded $48,439.90 in
attorneys' fees already incurred, $500 for attorneys' fees
"likely to be incurred" in the future and $1,035.66 in costs, for
a total of $49,975.56.

<u>CONCLUSION</u>

For the foregoing reasons, I recommend that plaintiff be
awarded judgment against defendants Sun Sports Bar, Inc., Fortune
Holding Group Inc. and Michael Yu, jointly and severally, in the
amount of $2,100,000 in statutory damages under 17 U.S.C.
§ 504(c), plus $49,975.56 in attorneys' fees and costs, for a
total judgment of $2,149,975.56. I further recommend that the
preliminary injunction previously ordered by the Court be
converted into a permanent injunction and an order of forfeiture
be issued in the form submitted by plaintiff in its Proposed
Default Judgment and Permanent Injunction (ct. doc. 45).

A copy of this report and recommendation will be filed
electronically and a copy sent by overnight mail to the
defendants on this date. Objections to the Report and
Recommendation must be filed with the Clerk of Court, with a copy
to the Honorable Carol B. Amon and the undersigned, by September
27, 2007. Failure to file objections within the time specified

waives the right to appeal.  <u>See</u> 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72(b).


       **SO ORDERED.**

Dated:  Brooklyn, New York
       September 12, 2007


                                             /s/
                                      MARILYN D. GO
                                      UNITED STATES MAGISTRATE JUDGE